UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


GARY ROBERT THURMER,                          CIVIL NO. 04-3174 (MJD/JSM)

        Petitioner,

v.                                            REPORT AND RECOMMENDATION

JOAN FABIAN,
Commissioner of Corrections,

        Respondent.


        This matter is before the undersigned United States Magistrate Judge on Gary

Robert Thurmer's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person

in State Custody [Docket No. 1].[1]  Respondent has filed a Return to the Petition for Writ of

Habeas Corpus [Docket No. 20]; and Memorandum [Docket No. 21].  In response, Gary

Robert Thurmer has filed a Traverse [Docket No. 24].  This matter was decided on the

written submission of the parties.

---

[1]     Thurmer has also filed three miscellaneous motions during the course of the
proceedings in this matter.  The Court will summarily address those motions.

        On October 6, 2004, Thurmer filed a Motion for Habeas Corpus Relief [Docket
No. 9], in which he requested that the Court grant his petition.  Thurmer's motion is
duplicative to the filing of the Petition itself, and should be denied as moot.  On
November 8, 2004, Thurmer filed a motion [Docket No. 12], requesting that the Court
amend the Order to Show Cause [Docket No. 11] filed on November 1, 2004, to correctly
state that he was challenging his convictions for assault and criminal property damage
rather than criminal sexual assault as stated in the Order.  Regardless of the typographical
error in the Order dated November 1, 2004, the Court has addressed Thurmer's Petition
challenging his convictions for assault and criminal property damage, and Thurmer's motion
should be denied as moot.  Finally, on November 22, 2004, Thurmer filed another Motion
for Habeas Corpus Relief [Docket No. 18], in which he requested that the Court deny
Respondent's request for an extension to file a response.  On November 30, 2004, this
Court granted Respondent's request for an extension of time [Docket No. 19], and thus
Thurmer's motion should be denied as moot.

This matter has been referred to this Court for a Report and Recommendation by the District Court pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c).  For the reasons discussed below, it is recommended that Gary Robert Thurmer's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

## FACTUAL BACKGROUND

On June 6, 2002, a jury convicted Petitioner Gary Robert Thurmer ("Thurmer") of Second Degree Assault and First Degree Criminal Damage to Property.  The underlying facts in this matter, as found by the Minnesota Court of Appeals, are set forth as follows:[2]

> On October 20, 2001, at 1:50 a.m., Bob Rasmussen awoke to the sound of someone walking across his porch. By the heavy footsteps, he recognized the person as appellant Gary Thurmer.  Thurmer entered the house and asked Rasmussen if he had any whiskey.  Rasmussen said no, but that Thurmer was welcome to look.  Thurmer found a bottle of rum in a cabinet and drank what was left in it.  Rasmussen shook Thurmer's hand and told him to go home.
>
> After Thurmer left, Rasmussen locked the door to the house.  Twenty minutes later, Rasmussen awoke to the sound of glass breaking. He rose, went to the door, and opened the door to find Thurmer standing outside.

---

[2]   In accordance with 28 U.S.C. § 2254(e)(1), the findings of fact made by the Minnesota trial and appellate courts are presumed correct unless rebutted by the Petitioner with clear and convincing evidence.  See, e.g., Miller-el v. Cockrell, 537 U.S. 322, 354 (2003) (Thomas, J., dissenting) (finding that "Title 28 U.S.C. § 2254(e)(1) requires that a federal habeas court 'presume' the state court's findings of fact 'to be correct' unless petitioner can rebut the presumption 'by clear and convincing evidence'") (quoting 28 U.S.C. § 2254); Perry v. Kemna, 356 F.3d 880, 883 (8th Cir. 2004) (concluding that under § 2254(e)(1), a state court's findings of fact "are presumed to be correct absent 'clear and convincing evidence' to the contrary" presented by the petitioner); see also Sumner v. Mata, 449 U.S. 539, 547 (1981) (stating that "[s]ection 2254(d) by its terms . . . applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"); Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir. 1994) (concluding that "[t]here is a presumption that historical fact-finding by a state court, whether trial or appellate, is correct"); Steele v. Young, 11 F.3d 1518, 1520 n. 2 (10th Cir. 1993) (holding that "[e]xplicit and implicit findings of historical facts by the state trial and appellate courts are presumed correct").

Thurmer had broken a hole in the screen door and the glass on the storm door. Rasmussen noticed that Thurmer had a gun under his arm, which was pointed toward Rasmussen's face. Rasmussen tried to talk to Thurmer, but Thurmer was non-responsive. After Thurmer put the barrel of the gun through the hole in the door, Rasmussen decided to call the police.

The first officer to arrive was Mille Lacs County Deputy Leroy Lassard. As Lassard pulled his squad car into the driveway, he saw a man with a gun on the front porch of the house. When Lassard yelled, Thurmer turned around, faced the squad car, and pointed the gun at Lassard. Lassard repeatedly ordered Thurmer to put down the gun, but Thurmer did not, and took several steps toward Lassard's squad car.

Thurmer hid behind a tree in front of the house and continued aiming his gun at Lassard, fumbling with it in what Lassard believed to be an attempt to load a round of ammunition into the gun. Then, Thurmer ran behind the house and out of view. Soon, two Mille Lacs Tribal Police officers arrived. The three officers looked for Thurmer. They found Thurmer lying on his stomach in the grass behind the house, still holding his gun pointed at the officers, while scooting backwards towards a swampy area. In a moment when Thurmer was distracted, Lassard ran to him, kicked his gun hand, and then reached down and took the gun.

 At some point, Thurmer's father and sister, who lived on the property, had come to the scene. Crow Wing deputies Goddard and Peterson arrived and tried to take Thurmer into custody. Officers found six rounds of 9mm ammunition in Thurmer's jacket pocket. Thurmer was placed in a squad car, where he began shouting and beating his head against the window. Deputy Goddard opened the door to talk to Thurmer, but Thurmer tried to get out of the car. Deputy Peterson sprayed Thurmer with pepper spray, and pushed him back into the car. Thurmer lay down in the backseat of the car and pushed the window assembly and door of the car with his feet long and hard enough to partially force the window assembly out of the frame. Even after he was placed in a hobble restraint, Thurmer pushed at the door of the squad and managed to bow it outward.

A complaint was filed in Crow Wing County charging appellant with first-degree burglary, second-degree assault with a dangerous weapon, and first-degree criminal damage to property (the squad car). On November 13, 2001, a hearing was held on Thurmer's motion for a Rule 20 evaluation. The district court granted the motion, and the order for the Rule 20 evaluation was issued on November 29, but the examiner was changed and a new order was filed December 18, 2001.

The Rule 20 evaluation was performed and the report completed on January 2, 2002, but for some reason, the results were not immediately mailed to court administration. Because of the delay, appellant moved to be

released on his own recognizance because he had been in custody since his arrest. At a hearing on March 20, 2002, the district court acknowledged that there had been a delay, but noted that the report had not been received by court administration until March 18, and that it was unclear who was to blame for the delay or what the remedy should be. The court denied Thurmer's motion for release or reduced bail.

A jury trial began June 4. Lassard and the Mille Lacs officers testified that Thurmer pointed the gun directly at them during the incident and that he appeared to be trying to load a round of ammunition into the 9mm semiautomatic handgun. They testified that they found Thurmer behind the house and that he continued to point the gun at them while lying on his stomach in the grass, despite repeated orders to drop it. When the officers finally took away the gun, they found that it was not loaded. Deputy Goddard testified that he had to move his squad car closer to Thurmer to take him into custody because Thurmer refused to walk, and the officers could not lift him. Goddard also described how Thurmer used his legs to push the window frame assembly partially out of the squad, even after being hobbled. Although Lassard said he had not noticed the odor of alcohol on Thurmer, Goddard and other officers said they did smell alcohol on Thurmer and that Thurmer's speech was slurred.

Rasmussen testified as a witness for both the state and the defense. He testified that he recognized Thurmer's steps on the porch before Thurmer entered the house. He noticed that Thurmer was very drunk, and that he did not seem to be aware of his actions. He also testified that before the police arrived, Thurmer put the gun against his own head, between his ear and jaw, saying things like "I don't care anymore," which led Rasmussen to believe Thurmer might kill himself. As a defense witness, Rasmussen stated that he never saw Thurmer aim the gun at any of the officers.

Thurmer's father and sister also testified on his behalf. They both stated that when they arrived on the scene, they tried to tell the officers that the gun was not loaded, and shouted for Thurmer to put it down. They also stated that Thurmer held the gun pointed at the ground, not the officers. All the defense witnesses testified that Thurmer was heavily intoxicated that night.

At the close of evidence, the district court instructed the jury that intoxication is not a defense to the charged crimes, but that if Thurmer was intoxicated to the point that he could not form the intent required for the crimes, the jury could consider that. The court noted that it was Thurmer's responsibility to show by the greater weight of the evidence that he was intoxicated. Counsel for both parties gave their closing arguments without objections.

The jury found Thurmer guilty of second-degree assault and first-degree criminal damage to property, but acquitted him of the burglary charge. He was sentenced to 36 months for assault, 13 months for damage to property, to run concurrently, plus restitution.

State v. Thurmer, No. C9-02-2211, 2004 WL 61115, at *1-3 (Minn. Ct. App. 2004).

Thurmer appealed his conviction to the Minnesota Court of Appeals, arguing that the evidence was insufficient to show that he possessed the specific intent required for the crime of assault and that the prosecutor committed prejudicial misconduct.  Id., at *1. Thurmer also challenged the delay in his trial due to the Rule 20 evaluation, alleged witness perjury, the district court's refusal to instruct the jury on a lesser-included offense, the sufficiency of the evidence supporting his criminal damage conviction, the district court's failure to dismiss the burglary charge before trial, and the restitution award.  Id. at *1, 6-7. On January 13, 2004, the appellate court denied Thurmer's appeal, although it modified the restitution award.  Id. at *7.  Thurmer's subsequent Petition for Review to the Minnesota Supreme Court was denied on March 30, 2004.

Following the denial of the Petition for Review, Thurmer filed his Petition for Writ of Habeas Corpus asserting the following claims that: 1) his speedy trial rights were violated; 2) the trial court erred by failing to dismiss the burglary charge prior to trial; 3) the prosecutor committed misconduct during voir dire and closing arguments; 4) there was insufficient evidence to support both the second-degree assault conviction and the first-degree criminal damage to property conviction; 5) a witness for the prosecution committed perjury; 6) the trial court erred by refusing to instruct the jury on the lesser included offense of "Dangerous Weapons" and by failing to dismiss the burglary charge prior to trial; and 7) the amount of restitution ordered was calculated incorrectly.  Petition, ¶ 12.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 of

the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d) as follows: Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has decided a case on a set of materially indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case. See Copeland, 232 F.3d at 973.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362). Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

With this standard of review in mind, this Court now reviews the Petition:[3]

**DISCUSSION**

**I.      Speedy Trial**

A criminal defendant is guaranteed the right to a speedy trial by the Sixth Amendment. Barker v. Wingo, 407 U.S. 514, 515 (1972). Although it is a fundamental right, it is "different from any of the other rights enshrined in the Constitution for the protection of the accused." Id. at 515, 519. The right to a speedy trial is necessarily relative and dependent upon the circumstances. Id. at 522.

In order to trigger a speedy trial act violation, a criminal defendant

must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim . . . . [T]he presumption that pretrial delay has prejudiced the accused intensifies over time.

---

[3]     The Court will review Thurmer's claims in the general chronological order in which they occurred during the course of his criminal proceedings.

United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002) (quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992)).

Thurmer raised two arguments at the Court of Appeals relative to his claim that his speedy trial rights were violated: 1) that his first appearance was 37 hours after arrest, one hour more than the 36 hours maximum allowed by Minn. R. Crim. P. 4.02, subd. 5(1); and 2) that the delay in processing his Rule 20 evaluation violated the spirit of the speedy-trial rule, even if it was not an actual violation. Thurmer, 2004 WL 61115 at *6. Thurmer does not further expand upon these claims in his Petition before this Court. See Petition, ¶ 12(i).

With respect to the first appearance issue, the Minnesota Court of Appeals noted that Thurmer "offer[ed] no suggestion that the one-hour delay was unreasonable or unnecessarily caused by the state." Id. The court further noted that no caselaw suggested that vacation of a conviction was the appropriate remedy even if the one-hour delay was unreasonable. Id. With respect to the delay in processing the Rule 20 evaluation, the appellate court found there was no violation because Thurmer did not demand a speedy trial until April 15, 2002, and his trial began June 4, 2002, less than 60 days after the demand as required by Minn. R. Crim. P. 11.10. Id. at *5. The appellate court also found that the prosecutor attempted to obtain the results of the Rule 20 evaluation sooner by calling the medical facility to find out why they had not yet come in. Id. at *6. Finally, the appellate court noted that Thurmer accrued jail credit for time served. Id. The appellate court concluded that Thurmer's right to a speedy trial was not violated. Id.

The facts in this case support the appellate court's conclusion that Thurmer's speedy trial rights were not violated. Thurmer's first argument that a one-hour delay in his first appearance violated the "prompt appearance rule" does not even appear to implicate a federal constitutional or statutory right. Instead it appears to be solely based on a

Minnesota Rule of Criminal Procedure 11.01, and is thus solely a state law question. "'[F]ederal habeas corpus relief does not lie for errors of state law' . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Moreover, the Court rejects the contention that a one-hour delay constitutes the type of delay that crosses the threshold dividing ordinary from "presumptively prejudicial" delay. <u>See</u> <u>Sprouts</u>, 282 F.3d at 1042.

Thurmer's second argument is that the delay in production of the Rule 20 evaluation violated his speedy trial rights. Thurmer does not challenge the appellate court's finding that he did not demand a speedy trial until April 15, 2002, nor that his trial commenced within 60 days of his demand. Furthermore, Thurmer fails to direct this Court to any legal authority which would support the proposition that the appellate court erred in its application of federal constitutional or statutory authority.

Therefore, in light of the evidence in the record and federal law, the conclusions of the trial court and the appellate court that Thurmer was not denied his right to a speedy trial, are neither contrary to nor an unreasonable application of the federal law, as articulated by the United States Supreme Court, or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Thurmer is not entitled to relief on this ground.

## II.     Failure to Dismiss the Burglary Charge

Thurmer asserts that the trial court failed to address his "motion to dismiss" the first degree burglary charge.  Petition, ¶ 12(h).  The appellate court found that no formal motion to dismiss the charge was ever made, and in any event, that Thurmer was acquitted of the charge.  <u>Thurmer</u>, 2004 WL 61115 at *7.

In his Petition, Thurmer quotes the following question posed by his counsel to the trial court on April 22, 2002, in support of his alleged motion to dismiss:

> As far as the burglary count goes, that stems from an incident that took place at Bob Rasmussen's place.  Mr. Rasmussen is present, and I know has assured us and Gary's father and Gary Himself [sic] that he certainly has no fear or concern for his safety and, in fact, I think is still questioning why the burglary charge has proceeded to the point it has."

Petition, ¶ 12(h).  Thurmer apparently construes the question posed to the trial court as a motion to dismiss the burglary charge.  This Court disagrees, and finds that not only does this question not amount to a motion to dismiss the first degree burglary charge, but that in any event, given Thurmer was acquitted of the charge, the issue is moot.  Having failed to allege any violation of his federal constitutional or statutory rights, Thurmer is not entitled to any relief  with respect to this claim.

## III.     Prosecutorial Misconduct

A criminal defendant is guaranteed the right to a trial by jury.  <u>Duncan v. Louisiana</u>, 391 U.S. 145, 156 (1968); <u>Miller v. Dormire</u>, 310 F.3d 600, 603 (8th Cir. 2002), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u>, Jan. 3, 2003.   The Constitution concomitantly guarantees a defendant the right to a fair trial through the Due Process Clauses.  <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).

Prosecutorial misconduct does not merit habeas corpus relief unless the prosecutor committed an error that effectively eliminated the defendant's due process right to a fair

trial.  See Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  Thus, a habeas petitioner "bears the heavy burden of showing that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair."  Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (emphasis added), (citing Jones v. Jones, 938 F.2d 838, 844-45 (8th Cir. 1991)).

On appeal, Thurmer first argued that prosecutorial misconduct had been committed in voir dire, when the prosecutor inquired into the political beliefs of prospective jurors and used peremptory strikes to strike three jurors based on their responses.  Thurmer 2004 WL 61115 at *4.  The appellate court noted that defense counsel had not objected, and thus the prosecutor was not asked to explain his reasons for striking the jurors.  Id.  Moreover, the appellate court noted that Thurmer had not cited to any Minnesota case or federal case which held that inquiring into a prospective juror's general political theory is inappropriate, and noted that the Minnesota Supreme Court had explicitly refused to extend such protections to a prospective juror's beliefs or philosophies.  Id. (citing State v. Buggs, 581 N.W.2d 329, 339 (Minn. 1998)).  The appellate court also found nothing in the record to show that the three jurors had been stricken on the basis of their political philosophy, and concluded that Thurmer had not shown that the prosecutor committed misconduct during voir dire.  Id.

Thurmer also argued that the prosecutor committed misconduct in closing arguments when the prosecutor allegedly endorsed the credibility of prosecution witnesses, gave his personal opinions, intentionally inflamed the passions of the jury, and misstated the law and evidence regarding the assault charge.  Id.  Thurmer specifically argued that the prosecutor gave his personal opinion as to whether the officers feared for their safety,

whether Thurmer was too intoxicated to form intent to commit assault, and whether the police witnesses were credible.  Id. at *5.  The appellate court again noted that defense counsel had not objected to the prosecutor's comments during his closing argument, a fact that normally would result in waiver of the right to have the issue heard on appeal.  Id. (citing State v. Gunn, 299 N.W.2d 137, 138 (Minn. 1980); State v. Flom, 285 N.W.2d 476, 477-78 (Minn. 1979)).  The appellate court nonetheless addressed Thurmer's contentions, finding that the prosecutor's statements were arguments that the evidence presented proved the elements of the crime, rather than his personal feelings about the case.  Id.

Thurmer also argued that the prosecutor committed misconduct by misstating the law and evidence regarding Thurmer's level of intoxication and whose burden it was to show that he was too intoxicated to form the requisite intent for an assault conviction.  Id. The appellate court found the prosecutor's commentary was "perhaps inartful," but also found that it accurately conveyed that Thurmer bore the burden of showing he was too intoxicated to for the necessary intent.  Id.  In any event, the appellate court determined that even if the prosecutor's comments were improper, they were rendered harmless by the trial court's jury instructions, which properly instructed the jury regarding the burdens of proof.  Id.

In his Petition, Thurmer argues that the prosecutor asked the prospective jurors whether they considered themselves "liberal" or "conservative" and subsequently used three of his peremptory challenges to dismiss three jurors who testified to "unabashed liberalism."  Petition, ¶ 12(a).  Thurmer does not, however, dispute the finding of the appellate court that no objections were made during voir dire, and thus the prosecutor was not asked to explain his reasons for striking any jurors.  Consequently, Thurmer has provided this Court nothing more than his subjective speculation that the prosecutor used

his peremptory challenges on the three particular jurors because of their responses to the prosecutor's questions regarding their "liberal" or "conservative" bent.   As the appellate court found, "[t]he record of voir dire provides any number of other reasons the prosecutor may have stricken the prospective jurors[.]"   Thurmer, 2004 WL 61115 at *4; see also Weaver v. Bowersox, 241 F.3d 1024 (8th Cir. 2001) (holding no error in finding of state court that prosecutor would have exercised strikes based on neutral reasons); United States v. Darden, 70 F.3d 1507, 1531 (8th Cir. 1995) (denying challenge where prosecutor asserted several race-neutral and gender-neutral reasons for strike in addition to one reason that was not race or gender neutral).

Thurmer also argues that the prosecutor engaged in misconduct during closing argument.   Thurmer specifically alleges that the prosecutor: 1) misstated evidence by stating "Now, we don't know much about the condition of the Defendant that night[,]" when the record showed that Thurmer was intoxicated; 2) offered his opinion that Thurmer's actions put other in fear of bodily harm; and 3) misstated the law when he told the jury that it was Thurmer's burden to prove that he was so intoxicated that he was incapable of forming intent.   Petition, ¶ 12(c).

This Court has reviewed Petitioner's allegations and the record and finds that the prosecutor's alleged misconduct during closing argument does not rise to the level of error which effectively eliminated Thurmer's due process right to a fair trial.   See Roberts, 137 F.3d at 1066.   This Court agrees with the appellate court that the prosecutor's comments during closing argument appear to be no more than proper commentary on the evidence presented at trial and the burden of proof shouldered by Thurmer as to his intoxication defense.   See Thurmer, 2004 WL 61115 at *5.

As such, in light of the evidence in the record and federal law, the conclusions of the appellate court that Thurmer was not denied his right to a fair trial, are neither contrary to nor an unreasonable application of the federal law, as articulated by the United States Supreme Court, or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, Thurmer is not entitled to relief on this ground.

## IV.    Sufficiency of the Evidence

According to the United States Supreme Court, the critical inquiry in reviewing the sufficiency of the evidence for a criminal conviction is:

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)) (emphasis in original).

Consistent with this articulation of our role by the Supreme Court, the Eighth Circuit has described the standard of review of insufficiency of the evidence claims as follows:

> Our standard of review is as narrow as it is well-established: This court must view the evidence in the light most favorable to the government and sustain the verdict if it is supported by substantial evidence.  Moreover, on appeal, the government must be given the benefit of all inferences that may logically be drawn from the evidence.  It is not necessary that the evidence exclude every reasonable hypothesis except guilt; instead, the evidence is simply sufficient if it will convince a trier of fact beyond a reasonable doubt that the defendant is guilty.  This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses.  Each of the elements of the crime charged may be proven by circumstantial evidence,

> as well as by direct evidence. And finally, this court must keep
> in mind that the standard to be applied to determine the
> sufficiency of the evidence is a strict one, and the finding of
> guilt should not be overturned lightly.

Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Brown, 921 F.2d

785, 791 (8th Cir. 1990)). "Our function as an appellate court is not to re-weigh the

evidence. To the contrary, we must accord 'great deference' where a state appellate court

has found the evidence supporting the conviction constitutionally sufficient," as is the case

here. Id. (citations omitted); see also Blair-Bey v. Nix, 44 F.3d 711, 713 (8th Cir. 1995)

(finding that, in evaluating claims that the evidence was insufficient to find guilt, courts must

examine "whether, after viewing the evidence in the light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt"); Redding v. State, 881 F.2d 575, 578 (8th Cir. 1989) (holding that in

"evaluating sufficiency of the evidence in habeas corpus petitions, we view the evidence

in the light most favorable to the prosecution and determine 'whether any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt'")

(citations omitted) (emphasis in original).

Thurmer argued on appeal that there was insufficient evidence to support both the

second-degree assault conviction and the first-degree criminal damage to property

conviction. The appellate court first addressed Thurmer's challenge to the sufficiency of

the evidence supporting his assault conviction, noting that the prosecution needed to prove

that Thurmer "acted with the intent to cause imminent bodily harm upon another person."

Thurmer, 2004 WL 61115 at *3 (citing Minn. Stat. § 609.02, subd. 10 (2002)). In support

of the conviction, the appellate court found that the state had presented evidence that

Thurmer had repeatedly aimed his gun at three different police officers; he had tried to load

the gun, despite the officers' repeated commands that he drop the weapon; he had left Rasmussen's house once and returned with the gun in hand; he hid behind a tree and attempted to flee officers; and he had six rounds of ammunition for the gun in his pocket, which testimony established could have been loaded individually into the gun without a clip. Id.  The appellate court acknowledged that there were witnesses who testified that Thurmer seemed too drunk to be thinking clearly, but found that the jury could reasonably conclude from the evidence that Thurmer had pointed his gun at Rasmussen or the police officers with the intent of either hurting them or causing them to fear that they would be hurt.  Id.

With respect to Thurmer's argument that there was insufficient evidence to support his criminal damage conviction, the appellate court credited the testimony of the officers who were at the scene and a mechanic who examined the squad car, finding that the jury could reasonably conclude that Thurmer did cause damage to the car during his arrest. Id. at *7.

Thurmer's argument to this Court, regarding his assault conviction, is that: 1) the evidence clearly indicated that he was intoxicated; 2) the gun had no magazine, was not loaded, was never fired at the officers, and that none of the officers actually saw a bullet in his hand when he was purportedly attempting to load the gun; 3) he did not say anything to the police officers during the encounter; 4) he attempted to hide from the officers; and 5) while the gun was demonstrated to the jury, the record does not contain any evidence that it had been test fired, or could actually fire.  Petition, ¶ 12(b).  Thurmer did not challenge the finding of the appellate court that the prosecution had presented evidence that Thurmer had repeatedly pointed the gun at the officers and at Rasmussen.

With respect to his conviction for criminal damage to property, Thurmer argued that he was too intoxicated to possess the requisite intent to commit criminal damage to

property; he was in handcuffs when he was placed in the squad car; after he was sprayed with pepper spray, he pushed the window out of the car, and then was taken out of the car and placed in a hobble restraint; the window was pushed back into place; Deputy Goddard testified that the window worked fine, and he had been using the car in that condition since Thurmer's arrest and through trial; and that while there was a dent to the squad car, it was estimated that it would only cost $36 to repair.  Petition, ¶ 12(g).  At most, Thurmer's arguments merely challenge the findings of fact and credibility determinations by the jury. As such, Thurmer essentially asks this Court to reweigh the evidence and draw all inferences in his favor.  That is not the province of this Court on habeas review. This Court will not, and cannot, second-guess the trier of fact's determination as to the credibility of the testimony of the various witnesses.  "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (concluding that "[t]o the sophistication and sagacity of the trial judge the law confides the duty of appraisal'") (quoting United States v. Oregon State Med. Soc'y, 343 U.S. 326 (1952)); see also United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004) (stating that questions involving the credibility of witnesses are left to the jury); United States v. Nururdin, 8 F.3d 1187, 1194 (8th Cir. 1993) (stating "[i]t is not our province on appeal to 'reweigh the evidence or judge the credibility of witnesses when reviewing the sufficiency of the evidence'").  Rather, it was Thurmer's burden to present this Court with clear and convincing evidence that the state courts' findings of fact were erroneous, see Perry, 356 F.3d at 883, a burden which Thurmer has not carried.

Viewing the evidence in the light most favorable to the prosecution, this Court concludes that a rational trier-of-fact could have concluded that the essential elements of

the crimes of second-degree assault conviction and the first-degree criminal damage to property conviction were proven beyond a reasonable doubt.   Therefore, in light of the evidence in the record and federal precedent, the conclusion that the evidence was legally sufficient to sustain Thurmer's conviction is not contrary to or a misapplication of federal law, nor an unreasonable determination of the facts based on the evidence as a whole. See 28 U.S.C. § 2254(d)(1).   Accordingly, Thurmer's claim for relief on this ground should be rejected.

## V.   Witness Perjury

Witness perjury is potentially a violation of a criminal defendant's due process rights. See Thiel v. Schuetzle, 200 F.3d 1120, 1121 (8th Cir. 1999), cert. denied, 530 U.S. 1218 (2000).   To show a violation of due process, a habeas petitioner must show that the prosecutor used perjured testimony, that the prosecutor knew or should have known of the perjury, and that a reasonable likelihood exists that the perjured testimony affected the outcome of the proceeding.   United States v. Peterson, 223 F.3d 756, 763 (8th Cir. 2000). The mere presence of a conflict between the testimony of witnesses is insufficient to establish perjury.   Id. (citing United States v. Jordan, 150 F.3d 895, 900 (8th Cir. 1998), cert. denied, 526 US. 1010 (1999)).

Thurmer contends that Officer Rice, one of the state's witnesses, made inconsistent statements, which called into question what actually happened.   Petition, ¶ 12(e).   First, Thurmer focused on the testimony by Officer Rice that Thurmer pointed the gun directly at Deputy Lassard.   Then Thurmer pointed to testimony by Officer Rice suggesting that Deputy Lassard had a flashlight and to testimony that he did not.   Id.   The appellate court concluded that Thurmer's argument could be reduced to an issue of witness credibility, and deferred to the jury's evaluation of the witnesses.   Thurmer, 2004 WL 61115 at * 6.   This

Court agrees, and finds no evidence in the record to indicate that Officer Rice perjured himself.   At most, Thurmer alleges that Officer Rice's testimony was inconsistent, an allegation which is insufficient to establish perjury.  See Peterson, 223 F.3d at 763.  It was the duty of the jury to decide the credibility of the witnesses at Thurmer's trial, including that of Officer Rice.  See Dabney, 367 F.3d at 1043.  Having failed to demonstrate with clear and convincing evidence that the jury's findings of fact are erroneous, Thurmer cannot establish any violation of his federal constitutional or statutory rights with respect to this claim.

**VI.    Refusal to Instruct on a Lesser Included Offense**

While the due process clause requires a state court to give jury instructions on lesser included offenses in capital cases, in a non-capital case failure to give such instructions "rarely, if ever, presents a constitutional question."  Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990).

Thurmer contends that the trial court erred by refusing to instruct the jury on the lesser-included offense of "Dangerous Weapons" under Minnesota Statute § 609.22.[4] Petition, ¶ 12(f).   The appellate court found that the prosecutor had argued that the dangerous weapon offense was inconsistent with the defense theory and the evidence presented that Thurmer was too intoxicated to form the requisite intent to find him guilty of the assault charge, and that the trial court did not abuse its discretion by refusing to include the instruction.  Thurmer, 2004 WL 61115 at * 7.  Thurmer does not provide any argument or otherwise demonstrate why the trial court's refusal to instruct the jury on the requested

---

[4]    Minnesota Statute § 609.22, Subd. 1(2) makes it a crime to intentionally point a gun of any kind, whether loaded or unloaded, at or toward another.

lesser-included offense rises to a violation of federal constitutional or statutory error, let alone error at all.  As such, Thurmer's claim is rejected.

## VII.   Restitution

Thurmer claims that the amount of restitution ordered is incorrectly $50 more than it should be.  Petition, ¶ 12(d).  At the appellate stage, the state agreed that the restitution award should have been $50 less than what was levied against Thurmer, and the Court of Appeals modified the award accordingly.  Thurmer, 2004 WL 61115 at * 7.  Notwithstanding this result, Thurmer still argues that that the award of restitution was inconsistent with the evidence.  Even if Thurmer was correct, his claim does not allege any violation of federal constitutional or statutory law, and thus is not a proper claim for habeas relief.  See Estelle, 502 U.S. at 67-68.  As such, this claim should be denied.

## RECOMMENDATION

For the reasons set forth above and based upon all the files, records, and proceedings herein, **IT IS RECOMMENDED** that**:**

1.      Gary Robert Thurmer's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **DISMISSED WITH PREJUDICE**;

2.      Gary Robert Thurmer's Motion for Habeas Corpus Relief [Docket No. 9] be **DENIED** as moot;

3.      Gary Robert Thurmer's Motion to Amend Order [Docket No. 12] be **DENIED** as moot; and

4.      Gary Robert Thurmer's Motion for Habeas Corpus Relief [Docket No. 18 be

**DENIED** as moot.


Date:          August 2, 2005

                               *s/ Janie S. Mayeron*
                               JANIE S. MAYERON
                               United States Magistrate Judge


**NOTICE**

       Under D. Minn. Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties by August 22, 2005, a writing which specifically identifies those portions of this Report to which objections are made and basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief with ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.